UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Troy Taylor, #315084, | ) | C/A No.: 5:13-cv-02239-RMG-KDW |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Bernard McKie, Warden, Lee Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Robert Troy Taylor ("Petitioner" or "Taylor") is a state prisoner who filed this pro se Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 24, 25. On February 20, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 26. Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment on May 27, 2014. ECF No. 35. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, be granted.

I.      Background

Petitioner is currently incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In January 2004, Petitioner was indicted by a

Georgetown County Grand Jury for one count of Lewd Act on a Minor Child. App. 77-78.[1] In June 2005, Petitioner was indicted by a Georgetown County Grand Jury for one count of Lewd Act on a Minor Child. App. 83-84. Additionally, Plaintiff was charged with second degree criminal sexual conduct ("CSC") with a minor child but waived presentment to the grand jury for an indictment on the charge. App. 8-10; 85-86. On April 20, 2006, Petitioner pleaded guilty to all three charges before the Honorable Edward B. Cottingham. App.  6-48. Attorneys R. Scott Joye and Delton W. Powers represented Petitioner, and Assistant Solicitor Robert B. Bryan appeared on behalf of the State. App. 3. Petitioner was sentenced to eight years, suspended on the service of five years with Petitioner to be placed on probation for three years. App. 45. Additionally, Petitioner was ordered to immediately register as a sex offender. *Id.*

While his charges in Georgetown County were pending, Petitioner was arrested and charged with kidnapping and CSC with a minor in Williamsburg County. ECF No. 24-4 at 39. Petitioner proceeded to trial on the CSC charge in Williamsburg County where he was represented by Charles David Barr. *See id.* at n.1. A Williamsburg County jury found Petitioner guilty as charged, and the presiding judge sentenced Petitioner to life without the possibility of parole ("LWOP") based on his prior "most serious" conviction from his Georgetown County plea. *Id.*

II.     Procedural History

There was no direct appeal of Petitioner's guilty pleas. On April 13, 2007, Petitioner filed an Application for Post-Conviction Relief ("PCR") alleging ineffective assistance of counsel, involuntary guilty plea, violation of rules of criminal procedure, actual innocence, and failure to perform pre-trial investigation.  App. 47-71.  On July 27, 2007, the State filed a Return and

---

[1] Citations to "App." refer to the Appendix for Petitioner's appeal of his judgment of conviction. That appendix is available at ECF Nos. 24-1, 24-2, 24-3, and 24-4 in this habeas matter.

requested an evidentiary hearing only on Petitioner's ineffective assistance of counsel claim. App. 72-78. The State moved for summary dismissal of the other allegations pursuant to section 17-27-70 of the South Carolina Code. App. 76. An evidentiary hearing was conducted before the Honorable Michael G. Nettles on November 20-21, 2008. App. 93. Petitioner was present and represented by Tara D. Shurling, Esq.; Assistant Attorney General Christina J. Catoe represented the State. *Id*. Petitioner, his plea attorney Scott Joye, Petitioner's parents, Linda Wells Taylor and Anthony Taylor, and witnesses Shane Christian Gray, Drexel Randolph Mixon, an unnamed nephew of Petitioner, and Sydney Taylor Brown testified at the hearing. App. 94-273.

In an Order filed January 27, 2009, the PCR court denied Petitioner's PCR Application in full, making the following findings from the guilty plea record, findings of fact and conclusions of law:

> In considering the Applicant's allegation that his guilty plea was involuntary due to ineffective assistance of counsel, this Court first looks to the extensive and thorough record created at the guilty plea itself. The plea record reflects that the Applicant was advised of the nature of the charges against him and the maximum penalties for each offense.[1] He was informed that each of the two lewd act charges carried a maximum of fifteen years, and that the CSC charge carried a maximum of twenty years. He was also advised that he would be required to serve 85%, of the sentence, and register as a sex offender. He was informed of the factual basis for the charges, the evidence against him, and the witnesses who would testify against him.

> The Applicant was also advised, by the plea court and by his attorneys, regarding the constitutional rights he was waiving by pleading guilty. First, he told the court that he understood that he had the right to have the grand jury review the CSC charge, and that twelve of the eighteen members would have to find probable cause before that case could proceed to trial. He told the court that he understood that procedure, wished to waive that procedure, and he stated that he had signed a document confirming his understanding and waiver of that procedure. He told the court that he understood the indictments and the serious nature of the charges.

---

[1] The plea judge pointed out that the Applicant had pending charges in Williamsburg, and clarified that although there may have been some hope of possible concurrent sentencing, another court in Williamsburg County would have to deal with that case separately in the future.

The Applicant further told the court that he was pleading freely and voluntarily, without any coercion, threats, or promises made, and without any reservations whatsoever. He told the court that his mind was clear and that he fully understood the proceeding. The court informed him that he could change his mind even at that moment, and change his plea to "not guilty" if he wished to do so. The Applicant elected to proceed with his plea, and told the court that if he had any questions, he would advise the court. The Applicant further told the court that he understood that he was presumed innocent on all charges, and that at a trial, the State would be required to prove his guilt beyond a reasonable doubt. He further stated that he understood that, although the allegations were from many years ago, the cases were still provable. He told the court that he wished to "give up forever" any potential defenses he had to the charges, and instead plead guilty. He specifically told the court several times "without hesitation" that he was guilty, and stated "I am guilty." He told the judge that he was "very thankful" for the services of his distinguished attorneys, and that he was "absolutely" satisfied with their services. He elaborated that they had "most definitely" done everything that he had asked them to do, including calling all of the witnesses he wanted them to call, and that there was nothing further that he thought they could or should do for him. The Applicant acknowledged that there was "no question" about the fact that he was guilty of the offenses. Finally, he told the court he answered all of the questions truthfully.

Thereafter, each of the three victims spoke at the plea, describing the difficulties, caused in their lives due to the offenses. Following their testimonials, the defense presented its case in mitigation, including the fact that the Applicant, as a young man, suffered abuse at the hands of certain family members. Defense counselors also presented numerous friends and family members, including former congregation members, to speak on the Applicant's behalf. Some of them confirmed the pattern of abuse that existed in the Applicant's extended family. Several letters of support were also presented to the court for consideration. Finally, the Applicant was given the opportunity to speak, and he offered an apology for his "part of the pain." He stated that he felt the solicitor had acted "very properly" in the case. He requested that the court show him mercy, so that he could return home and be a father to his three children.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

It is well-settled that "[a] guilty plea is a solemn, judicial admission of the truth of the charges against an individual; thus, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed," Dalton v. State, 376 S.C. 130, 654 S.E.2d S70 (2007) (*citing* Blackledge v. Allison, 431 U.S. 63 (1977)). "[S]tatements made during a guilty plea should be considered conclusive unless a criminal inmate presents valid reasons why he should be allowed to depart from the truth of his statements." Id. (*citing* Crawford v. United States, 519 F.2d 317 (4th Cir. 1975); Edmonds v. Lewis, 546 F.2d 566 (4th Cir. 1976)). The

4

Applicant, bearing the burden of proof, must credibly convince this Court, by the preponderance of the evidence, that the very thorough record of his guilty plea is unworthy of reliance, and that he is entitled to relief.

In this case, the Court did not generally find the Applicant's testimony to be credible. This finding is based upon the fact that his testimony at the PCR hearing was entirely self-serving, was indirect contradiction with statements he made at his guilty plea, and was at odds with statements he made when he was not aware that he was being recorded. (See Respondent's Exhibit # 1). Conversely, this Court did find Attorney Joye's testimony to be credible, candid, and more reliable than that of the Applicant. Regarding the testimony of the other witnesses presented on the Applicant's behalf, this Court has evaluated the testimony, including the Affidavits submitted, taking into account possible biases; the basis for the knowledge asserted; any contradictions between the testimony and other evidence; and the number of years that has passed between the dates of the events and the time the testimony was offered.

<u>Allegations # 1 & 2: Involuntary Plea Due to Counsel's Failure to Advise the Applicant Regarding the Two-Strikes Law</u>

The Applicant first alleges that plea counsel was ineffective for failing to sufficiently advise him that a conviction for CSC with a minor in the second degree was a "most serious" strike which could be used as a predicate offense for his Williamsburg County sentence. It is clear that prior to the plea, neither Attorney Joye nor Attorney Powers discussed with the Applicant the effect of a "most serious" strike, under S.C. Code Ann. § 17-25-45, regarding the Georgetown CSC charge to which the Applicant pled.[2] The two-strikes statute had no effect on the Georgetown County convictions, nor did it influence the penalty for those convictions. However, following the plea, when Attorney Joye realized that the still-pending Williamsburg case involved charges that would subject the Applicant to life without parole if he were to be convicted as indicted, he spoke with the prosecutor in Williamsburg, Kimberly V. Barr, Esquire, to discuss the possibility of a plea to the lesser offense of lewd act upon a minor. Ms. Barr and the victim did agree to a plea to lewd act, although Ms. Barr indicated at that time she did not feel that a sentence recommendation would be appropriate. (See Affidavit of Kimberly V. Barr.)

Attorney Joye testified that he thereafter advised the Applicant that he would avoid a sentence of life without parole if he pled to lewd act in Williamsburg. Counsel advised the Applicant that he firmly believed he would be able to work out an arrangement such that the Applicant would not serve even one additional day in prison. Counsel strongly urged the Applicant to accept such an

---

[2] Although Attorney Powers was not called to testify at the PCR hearing, the parties stipulated that he did not discuss the two-strikes statute with the Applicant prior to the guilty plea.

5

arrangement, but the Applicant declined. The attorney-client relationship deteriorated after this discussion, before any plea agreement in Williamsburg was formalized, and Attorney Charles David Barr took over the Applicant's representation. In July 2007, the Applicant was convicted by a Williamsburg jury of both kidnapping and CSC with a minor in the second degree. The Honorable George C. James, Jr., sentenced the Applicant to two consecutive life without parole sentences, pursuant to S.C. Code Ann. § 17-25-45, due to his previous "most serious" offense.

First, this Court finds that counsel cannot be deemed deficient for failing to advise the Applicant of the two-strikes law, because such a consequence is considered "collateral" to the guilty plea. The imposition of a sentence may have a number of collateral consequences, but a guilty plea defendant need only be affirmatively informed of the "direct" consequences of the plea - consequences which have a "definite, immediate and largely automatic effect" on the "range of the defendant's punishment" for that offense. Williams v. State, 378 S.C. 511, 515, 662 S.E.2d 615, 617 (Ct. App. 2008) (quoting Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364 (4th Cir. 1973)). "Direct consequences" are the direct and immediate results of a guilty plea. State v. Armstrong, 263 S.C 594, 211 S.E.2d 889 (1975) (citing Cuthrell, supra). Even certain mandatory consequences, such as registration on the sex offender registry, are considered collateral because they have no effect on the range of defendant's punishment for the offense to which he pled. See Williams, supra.

"A guilty plea is not rendered involuntary if the defendant is not informed of the collateral consequences of his sentence" Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002) (citation omitted) (parole eligibility is collateral); see also Smith v. State, 329 S.C. 280, 284, 494 S.E.2d 626, 628 (1997) (a crime's designation as "violent" is a collateral consequence, even though a subsequent conviction for a "violent" crime would subject the defendant to a sentence with no parole); Jackson v. State, 349 S.C. 62, 562 S.E.2d 475 (2002) (community supervision is collateral); Pandall v. State, 356 S.C. 639, 591 S.E.2d 608 (2004) (85% service requirement is collateral); Knox v. State, 340 S.C. 81, 530 S.E.2d 887 (2000) (defendant can only attack a guilty plea on the basis of "collateral consequences" where he is affirmatively misadvised) (overruled in part on other grounds). Counsel cannot be held ineffective for failing to advise a defendant regarding indirect consequences that do not "flow directly from his guilty plea." Page v. State, 364 S.C. 632, 637,615 S.E.2d 740, 742 (2005). Consequences that stem from a separate proceeding are collateral consequences of which a defendant need not be advised prior to entering a plea of guilty. See id.

There are no cases in South Carolina directly addressing whether a "strike'' under the life without parole statute is a collateral consequence of a guilty plea. However, the recent Williams case, cited above, clearly adopts the "direct" versus "collateral" distinction that is cited repeatedly in federal case law. In addition, the cases from the federal circuit and district courts support that a consequence of this

nature is collateral. See King v. Dutton, 17 F.3d 151 (6th Cir. 1994) (defendant's guilty plea to murder was not involuntary where he was not informed that the plea could be used as an "aggravating circumstance" to elevate the sentence to death in a then-pending, but unrelated, murder charge from another county); Wright v. U.S., 624 F.2d 557, 561 (5th Cir. 1980) ("a plea's possible enhancing effect on a subsequent sentence is merely a collateral consequence of the conviction; it is not the type of consequence about which a defendant must be advised before the defendant enters the plea"); U.S. v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990) (the "consequences" of a guilty plea with respect to sentencing means that the defendant must understand the maximum prison term and fine for the offense charged); U.S. v. Brownlie, 915 F.2d 527, 528 (9th Cir. 1990) (the possibility that a defendant will be convicted of another offense in the future and will receive an enhanced sentence based upon the instant conviction is not a direct consequence of a guilty plea); U.S. v. Edwards, 911 F.2d 1031, 1035 (5th Cir. 1990) (uncounseled defendant who pled guilty to receive a "time-served" sentence in state court needed not be advised that her plea could be used to enhance her sentence in a pending federal case; such consequence was merely collateral); U.S. v. Long, 852 F.2d 975 (7th Cir. 1988) (a consequence cannot be "direct" where it has no effect upon the nature or length of the sentence being imposed for that offense); U.S. v. Lambros, 544 F.2d 962, 966 (8th Cir. 1976) (the possibility of enhanced punishment for a subsequent similar conviction is not a direct consequence of a guilty plea); U.S. v. Salmon, 944 F.2d 1106, 1130 (3rd Cir. 1991) (the effect of a conviction on sentencing for a later offense under "career offender" law is a collateral consequence of which a defendant need not be advised; defendant need not be advised of even "foreseeable" collateral consequences in order for his plea to be voluntary under the constitution; defendant need only be advised of the direct consequences, which include only the maximum prison term and any fine); McCarthy v. U.S., 320 F.3d 1230, 1234 (11th Cir. 2003) (the fact that defendant's guilty plea could have sentencing consequences in subsequent federal prosecution were clearly collateral, and neither the court nor McCarthy's counsel were constitutionally required to make him aware of them); see also Weinstein v. U.S., 325 F.Supp. 597, 600 (1971) (it is proper to "assume that the defendant will not be guilty of a subsequent offense")(citation omitted); Fee v. U.S., 207 F.Supp. 674 (1962) (defendant's guilty plea, which was later used to enhance the sentence on a subsequent conviction, was not involuntary where he was not informed that the plea could be used to enhance the subsequent sentence under a "third offender" provision).

Therefore, this Court finds that, in this case, the effect of the Applicant's Georgetown guilty plea upon the later Williamsburg sentence was "collateral" rather than "direct." The Williamsburg life without parole sentence was contingent upon several factors. First, the solicitor could have decided she lacked sufficient evidence to prosecute and could have dismissed the case altogether, Alternatively, the solicitor could have offered a plea to a lesser offense not subjecting the Applicant to life without parole. In addition, the Applicant could have taken the case to trial and been acquitted of the charges. Finally, the

legislature could have changed or repealed the life without parole statute such that it would not apply to the Applicant. This Court finds that the Applicant's life without parole sentence was a "direct" result of a jury's finding that the Applicant committed the offenses of kidnapping and criminal sexual conduct in Williamsburg County. However, the life without parole sentence was not a direct consequence of the plea in Georgetown. Therefore, the Applicant's attorneys did not render constitutionally deficient performance for failing to advise the Applicant of the two-strikes law, and the plea is not rendered involuntary on this basis.

Even if this Court were to find that a "most serious" strike was a consequence of which the Applicant should have been advised, this would not automatically end the Court's inquiry. The Applicant still must convince the court, through presentation of probative and credible evidence, that he would have gone to trial rather than pleading guilty. See Smith v. State, 369 S.C. 135, 139,631 S.E.2d 260, 261-62 (2006). Mr. Taylor testified that he would have gone to trial had he known about the applicability of the statute. However, this Court did not find him to be credible, and has no reason to trust this testimony. Additionally, although the Applicant's friends and family members offered their opinions that the Applicant would not have pled guilty had he known of the statute, this Court must bear in mind that these persons cannot truly know what was in the Applicant's mind around the time he pled. Some of these same individuals expressed shock that the Applicant would have ever pled guilty to such offenses, but he nevertheless did so.

Neither the Applicant, nor the witnesses in his behalf, testified as to specific reasons why knowledge of the life without parole statute would have caused the Applicant to change his plea from guilty to not guilty. However, importantly, the Applicant indicated that he expected to be exonerated on the Williamsburg charges. Therefore, at that time, life without parole would have been a mere future contingency that he thought would never apply to him. Furthermore, this Court would note that the Applicant was facing fifty years, at 85%, for the Williamsburg charges. Considering that the Applicant was approximately age 36 at the time of his plea, the Applicant failed to point to specific reasons why the difference between life without parole and a fifty-year sentence was significant enough to him personally that he would have changed his mind about pleading guilty under the circumstances at the time of the plea. Accordingly, this Court was simply not convinced that the Applicant would have gone to trial rather than pleading guilty if he had known about the two-strikes statute.

In addition, this Court finds that the assistant solicitor in Williamsburg had, in fact, extended a plea offer to the lesser offense of lewd act upon a minor, which would not have subjected the Applicant to life without parole. The Applicant's attorney advised him that he could avoid the possibility of life without parole if he would accept the plea, and advised him that he sincerely believed that he could convince the solicitor and/or the sentencing judge to have the Applicant sentenced

8

such that he would not serve even one additional day in prison. Counsel strongly urged the Applicant to agree to accept such an arrangement offer. However, the Applicant chose to reject the offer and exercise his right to a jury trial, which ultimately resulted in his conviction and life without parole sentence.

This Court is convinced that counsel would have worked vigorously to secure a lewd act plea in Williamsburg giving the Applicant a sentence concurrent with the Georgetown sentences, and this Court believes that he most likely would have succeeded. This Court also finds that the Applicant was fully advised about this and was strongly urged to accept such an arrangement. Had he agreed to do so, he most likely would not have served any additional time in prison, and he absolutely would not currently be serving a life without parole sentence. Therefore, this Court finds that the Applicant knowingly and voluntarily proceeded to trial in Williamsburg with full awareness that he would receive life without parole if convicted, and he alone had the opportunity to completely avoid what might be considered a harsh result.[3] This Court finds that this circumstance supercedes the failure of counsel to specifically inform the Applicant regarding the two-strike law, such that the Applicant's life without parole sentence is the direct and proximate result of (1) his knowing and voluntary decision to reject the guilty plea to lewd act in Williamsburg; and (2) his ultimate conviction by a jury in Williamsburg.

### Allegations # 3-8: Ineffective Assistance of Counsel with Respect to the CSC Charge

As to the Applicant's remaining contentions, all regarding ineffective assistance of counsel with respect to the criminal sexual conduct charge, this Court finds that the Applicant failed to credibly prove that counsel's performance fell below prevailing professional norms, and failed to prove that he was prejudiced thereby. This Court finds that, prior to the plea, counsel and the Applicant discussed the charge, the possible penalty, and the Applicant's constitutional rights. This Court finds that the Applicant was fully advised, prior to acceptance of his plea, that he could not be tried on the CSC charge until the charge was presented to the grand jury. Counsel and the Applicant reviewed discovery prior to the plea. In addition, counsel's investigator, a former FBI agent, met with the Applicant and his family members and interviewed potential fact witnesses named by the Applicant. Counsel learned through discussions with his investigator that the pertinent witnesses had no specific memory of the events in question due to the passage of several years. However, some of the witnesses recalled facts that were harmful to the defense, including that the Applicant used to play "strip tag" with some of the boys. Counsel and the Applicant also discussed the effect of other un-indicted allegations made by one of the lewd act victims and by this victim's cousin.

---

[3] This Court recognizes that whether life without parole is an appropriate or suitable punishment for these offenses, or for the Applicant, is well outside the scope of review, since the legislature has determined that persons who twice commit offenses of this nature serve a sentence of life without parole.

Counsel and the Applicant discussed the fact that if the CSC case went to trial, there would be no physical evidence presented by the State.[4] Counsel advised the Applicant that the case would come down to a "swearing contest," if he chose to testify, and that the defense would focus on cross-examination and impeaching the credibility of the victim and other witnesses presented by the State. They also discussed the potential for Lyle evidence. They discussed possible defense strategies, including development of the victim's possible motives for fabricating the assault, and bringing out his history of drug abuse. They discussed how the Applicant's own prior sexual abuse might be viewed by a jury, as well as the potential negative effect of the Applicant's former position as a pastor to the youths. They discussed the pornography found on the Applicant's church computer, and how evidence of it might be raised at trial.

Counsel and the Applicant also discussed the range of dates encompassing the victim's allegations. The offense occurred in 1999, when the victim was 11 or 12 years old, but was not reported until 2005. The victim was therefore unable to ever pinpoint an exact date for the offense. The discovery, including the arrest warrant, incident report, and statement of the victim, indicated that the assault occurred sometime in June or July of 1999. The incident report indicated that the assault took place following a trip to Huntington Beach State Park, after which the youth group returned to the church. The victim and another young man were waiting to shower off when the Applicant approached and offered to allow them to shower at his home instead. According to the victim, the assault occurred while he was later showering at the Applicant's house. Thereafter, the Applicant told him to be quiet and not tell anyone. Shortly before the plea, a proposed indictment was prepared by the solicitor, listing the dates of "on or about August 5-7, 1999," as the time frame during which the assault occurred. The record is not clear on why the dates changed from June-July to August 5-7. Counsel was unable to recall specifically when he learned of the new proposed dates or how they were ascertained, although he did indicate that he had been pressing the solicitor for a more definite time period.

Testimony presented on the Applicant's behalf at the PCR hearing indicated that the Applicant and his family learned of the August 5-7 dates at least a week prior to the plea. This Court finds that the Applicant was aware of the new dates prior to the acceptance of his plea, and that at no time did the Applicant tell counsel that the new dates had an impact upon his decision to plead guilty. Instead, he told counsel he would waive presentment of the charge to the grand jury - thus waiving confirmation of the new dates - and plead guilty. The fact that the Applicant did so, and that he specifically admitted his guilt to such an offense, indicates to this Court that he knew that he committed the offense in the summer of 1999.

---

[4] This victim testified in the Williamsburg trial and was apparently found to be a credible witness.

Clearly, there exists a sharp contrast between the Applicant's unequivocal admission of guilt to the CSC offense on the dates of August 5-7, 1999, and his current allegation that he has an alibi for those very dates. At the PCR hearing, the Applicant presented testimony and Affidavits indicating that he was involved in a repair project at the home of Kimberly Cook on the dates of August 5-7, 1999, from morning to late afternoon.[5] The alibi evidence presented was limited to August 5, 6, and 7. Meanwhile, the proposed indictment covered a time frame of "on or about August 5-7, 1999." Since the Applicant voluntarily waived confirmation of these dates by waiving presentment to the grand jury, and because the time frame in this case was never exact or definite, this Court is not convinced that the victim would have testified at trial that the offense absolutely occurred during August 5-7.

In addition, there is nothing in the record that convinces this Court that the victim's trial testimony would have tied the assault to the "World Changers" event reflected in the August 1, 1999 church bulletin (entered as an Applicant's Exhibit at the PCR hearing), although the bulletin may have triggered the victim to recall that the assault occurred around that time. The bulletin did not mention Huntington Beach State Park, or any events apparently connected to the allegations of the assault as reflected in the victim's statement. Moreover, testimony at the PCR hearing indicated that the youth group frequently took trips to the beach, since it was not far from the church. Therefore, this Court finds that the alibi evidence presented by the Applicant does not necessarily refute that the crime occurred. See Glover v. State, 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995) (purported alibi which leaves room for the possibility that the accused is guilty is no alibi at all).

This Court believes that, under the circumstances of this case, had the Applicant elected to go to trial, and had he notified the solicitor of an alibi defense pursuant to Rule 5(e), SCRCrimP, this would have likely prompted one of two things. First, the solicitor could have reformed the indictment to cover a period of time that would more properly reflect the victim's recollection of the time frame. See State v. Wade, 306 S.C. 79, 409 S.E.2d 780 (1991) (indictment covering a two-year period for one sexual assault incident not unconstitutionally overbroad where victim could not recall precise dates of the incident). Alternatively, the victim could have testified that the assault occurred sometime around August 5-7, i.e., "on or about" those dates, in keeping with the language of the current proposed indictment. For the above reasons, this Court does not find a reasonable probability that the Applicant's proposed alibi defense for the dates of August 5-7, 1999, would have been successful had the Applicant elected to go to trial.

---

[5] This Court would note that one affiant came forward following the hearing and requested that his Affidavit be withdrawn, indicating that he was no longer certain about the precise dates due to the passage of so much time. This serves to illustrate the difficulties with witness' memories in cases of this nature.

The Applicant also presented testimony at the PCR hearing that, although showers were installed at the church in 1998, they froze up over the winter and were inoperable following the winter of 1999. Assuming those facts are accurate, the church showers would have been operable for a very short period of time during the Applicant's tenure as pastor. Since the discovery always clearly indicated that the offense occurred after the winter of 1999, the Applicant, as pastor of the church, would have in the best position to discern this discrepancy and alert his attorney. Otherwise, counsel would have no reason to investigate this particular aspect of the victim's allegations. However, the Applicant failed to mention this to counsel as a potential matter to be investigated, and counsel was not otherwise informed of it. Further, this Court is not convinced that such a defense would have successfully or credibly refuted the victim's allegations at trial.

Under the Sixth Amendment, the right to counsel exists to "assist" the accused with his defense. Certainly, a criminal defendant must bear some responsibility for his own defense, in that he must provide his attorney with pertinent factual information to enable counsel to determine whether there exist any plausible legal or factual avenues to investigate. Counsel was not necessarily required to investigate every aspect of the victim's allegations unless given some reason to investigate. See Strickland v. Washington, 466 U.S. 668, 691 (1984) (noting that a decision not to investigate some aspect of a case must be assessed for reasonableness under all the circumstances, with heavy deference to counsel's judgments). This Court finds that the Applicant failed to prove that a potential alibi for the specific dates of August 5-7 was a matter that counsel should have investigated at the time, or that such a defense would have likely been successful at trial. This Court also finds that because counsel was not put on notice regarding a defense related to the operability of the church showers, he had no reason to pursue this issue.

Counsel performed reasonably considering the investigation he considering that, following discussions with counsel, the Applicant did not ask counsel to conduct any further investigations, nor did he inform counsel that he wished to have more time to look into potential defenses. Instead, approximately one week prior to the plea, the Applicant advised counsel that he felt that pleading guilty would be in his best interests in light of the evidence. Thereafter, when he did plead guilty, he told the court that his attorneys "most definitely" did everything he asked them to do, and that he was "absolutely" satisfied with their services. Therefore, this Court finds that the Applicant failed to meet his burden to prove that counsel's performance was unreasonable under the circumstances.

This Court also finds that the Applicant failed to credibly prove the requisite prejudice. The potential defenses now alleged by the Applicant, as discussed above, relate only to the CSC charge, one charge out of three. This Court finds that there were no plausible defenses whatsoever to the two lewd act charges, and therefore a guilty plea to those charges was unquestionably reasonable due to overwhelming evidence. There were no eyewitnesses who could refute the

allegations. Even the Applicant's parents could not deny that it was common for the Applicant and the victims to sleep in the same bed. Both victims were prepared to testify at trial, and, in fact, one of the victims, whom counsel felt was a particularly credible witness, made a special trip from his duty in Iraq to testify at trial. For this reason, the State intended to try all three cases successively. The State planned to present Lyle evidence in each lewd act trial to prove common scheme or plan, including testimony by another young man who also professed that the Applicant molested him in a similar fashion. The State also had in evidence a tape-recorded conversation between the Applicant and his now ex-wife, which contained admissions of guilt on both lewd act charges.[6] (See Respondent's Exhibit # 1). In addition, the State could have presented admissions made by the Applicant to Georgetown Investigator Tom Digsby. Counsel and the Applicant discussed all of this evidence, and counsel advised the Applicant that the likelihood of conviction on both lewd act charges was very high.

Considering this, counsel worked to negotiate a plea that would combine all three of the Georgetown offenses and give the Applicant as little prison time as possible. Initially, the Applicant did not appear to be amenable to the idea of a plea, and he rejected an early offer for a plea to assault and battery of a high and aggravated nature. However, after receiving and listening to the tape recording mentioned above, during which he made candid admissions of inappropriate touchings of both lewd act victims, the Applicant told counsel that he had determined that the "deal" with respect to all three Georgetown charges would be in his best interests. Counsel testified that prior to the plea, and following a discussion in chambers, it was understood by all that the Applicant would receive a sentence of eight years, suspended to five years of active time and three years of probation. This was over the objection of the solicitor, who wanted at least ten years. By his plea, the Applicant avoided the possibility of receiving up to fifty years in prison had he gone to trial on each charge.

This Court finds that counsel reasonably evaluated the strength of the State's cases against the Applicant, thoroughly discussed this with the Applicant, and fully advised him of his options under the circumstances. This Court rejects the Applicant's contention that he was forced to plead because his lawyer was unprepared. It is true that counsel was not prepared for trial on the day of the plea; however, the reason he was not prepared for trial was because the Applicant made his decision to plead guilty in advance - regardless of whether he acknowledged this fact to all of his family members and friends. This Court finds that the Applicant's decision to combine a plea of guilty to all three charges was heavily based upon the fact that the State could have presented strong evidence against him, including a very inculpatory tape of the Applicant confessing certain acts to his ex-wife regarding the two lewd act charges. This Court also finds that the

---

[6] Counsel testified that, after the Applicant's wife initiated divorce proceedings, he warned the Applicant to assume all conversations with his wife would be tape-recorded. Nevertheless, this tape-recording surfaced later.

"unofficial" negotiated five-year active sentence, concurrent on all three charges, weighed into his decision, as did the fact that the solicitor stated his intentions to try the cases back-to-back. The Applicant presented no evidence at the PCR hearing that the solicitor could not have indicted him on the CSC charge such that the case would have been tried in the third successive week, as the solicitor told counsel he planned to do. This Court finds that the Applicant also pled because he wished to avoid the embarrassment of public trials, and the risk of receiving significantly more time if he were convicted. Furthermore, this Court has no reason to doubt that, as reflected in the plea record, the Applicant was motivated to enter a plea in order to confess his guilt and own up to his "part of the pain." Finally, this Court finds that counsel advised the Applicant to tell only the truth at his plea. The Applicant informed the plea court that he had, in fact, told only the truth.

In sum, the Applicant's self-serving testimony at the PCR hearing was simply not credible or trustworthy, and this Court finds that the Applicant did not present sufficiently persuasive reasons to permit departure from the sworn statements he made at his guilty plea. See Dalton, supra. Accordingly, this Court finds that the Applicant failed to meet his burden to establish that but-for deficient performance of counsel, he would have proceeded to trial rather than pleading guilty. As discussed above, this Court was not convinced that, even had the Applicant known about the two-strikes law, he would have made a decision to proceed to trial instead of taking the concurrent five-year sentences. Furthermore, this Court finds that even had the Applicant elected to proceed to trial on the CSC charge, he most probably would have been convicted, and would therefore be serving exactly the same sentence he is currently serving. This is an additional reason supporting this Court's finding that the Applicant failed to prove prejudice.

## CONCLUSION

In summary, this Court finds and concludes that an offense's qualification as the first of two "most serious" strikes, pursuant to S.C. Code Ann. § 17-25-45, is a collateral consequence of a guilty plea, and that the Applicant in this case entered a free and voluntary guilty plea even though his attorneys did not advise him regarding that consequence. This Court further finds and concludes that the Applicant failed to prove that counsel's performance was outside the range of competence required in criminal cases, and failed to prove that his plea was the result of ineffective assistance of counsel. Further, this Court finds and concludes that the record otherwise supports that the Applicant entered a free, knowing, voluntary, and intelligent guilty plea, having been accurately advised regarding the plea's direct consequences. Accordingly, this Court must deny post-conviction relief as to all three convictions, due to the Applicant's failure to meet both prongs of his burden of proof under Strickland v. Washington, 466 U.S. 668 (1984), Hill v. Lockhart, 474 U.S. 52 (1985), and Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985).

Counsel's attention is directed to <u>Marlar v. State</u>, 375 S.C. 407, 653 S.E.2d 266 (2007), and Rule 59(e), SCRCP, regarding the filing of a Motion to Alter or Amend should counsel believe this Order fails to adequately address all issues raised as required by S.C. Code Ann. § 17-27-80 (2003). This Court further advises that if Applicant desires to secure appellate review of this Order, a notice of appeal must be filed and served within thirty (30) days of the service of this Order. Pursuant to Rule 71.1(g), SCRCP, PCR counsel must file a notice of appeal on Applicant's behalf if Applicant wishes to pursue appellate review. Applicant and counsel are directed to Rules 203, 206, and 227 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of appeal has been timely filed.

App. 340-355. On February 9, 2009, Petitioner filed a Rule 59(e), SCRCP, Motion to Alter or Amend. App. 356-62. The PCR Court denied the Motion by Order filed March 30, 2009. App. 365. Petitioner, represented by Jeremy Thompson, filed a Petition for Writ of Certiorari, dated March 22, 2010. ECF No. 24-6. The two issues presented, quoted verbatim, were:

I.   Whether the lower court improperly found that defense counsel was not ineffective for failing to advise the Petitioner that his Georgetown County plea to criminal sexual conduct with a minor in the second degree would be a predicate "most serious" office that would enhance the sentence for his pending Williamsburg County charge to life without parole?

II.  Whether the lower court improperly found that defense counsel was not ineffective for failing to conduct a sufficient investigation into the criminal sexual conduct with a minor in the second degree charge?

*Id.* at 3. Subsequently, Petitioner filed a Motion to File an Amended Petition for Writ of Certiorari, ECF No. 24-7, which the South Carolina Supreme Court granted on May 14, 2010, ECF No. 24-9. In his Amended Petition for Writ of Certiorari, Petitioner presented two questions, which quoted verbatim were:

I.   Whether the lower court improperly found that defense counsel was not ineffective for failing to advise the Petitioner that his Georgetown plea to criminal sexual conduct with a minor in the second degree would be a predicate "most serious" offense?

II.  Whether the lower court improperly found that defense counsel was not ineffective for failing to conduct a sufficient investigation into the criminal sexual conduct with a minor in the second degree?

In an Order filed October 6, 2011, the South Carolina Supreme Court granted the Petition for certiorari. ECF No. 24-13. Petitioner filed his brief with the South Carolina Supreme Court on February 6, 2012, and Respondent filed its brief on May 22, 2012. ECF Nos. 24-14, 24-15. The South Carolina Supreme Court affirmed the PCR Court's Order of Dismissal in a published opinion dated June 19, 2013. *See* ECF No. 24-16; *Taylor v. State*, 745 S.E.2d 97 (S.C. 2013). The South Carolina Supreme Court denied Petitioner's request for a rehearing. ECF No. 24-18. The Remittitur was issued on July 25, 2013. ECF No. 24-19. This habeas Petition followed on August 19, 2013. ECF No. 1.

III.     Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus:

GROUND ONE:   Ineffective Assistance of Counsel for failing to conduct a sufficient investigation into the CSC charge. ECF No. 1 at 5.

Petitioner attaches 17 pages of supporting facts for Ground One. ECF No. 1-1. Specifically, Petitioner argues that his defense counsel failed to recognize the importance of the date change of his CSC offense from June 1 through July 31 to August 5-7. *Id.* at 1-5. Further, Petitioner contends that thereafter, defense counsel failed to investigate possible defenses, particularly an alibi defense, and thereafter sufficiently prepare for trial. *Id.* at 5-6. Additionally, Petitioner argues that his PCR counsel failed to properly prepare for his PCR hearing and did not speak to key witnesses prior to his PCR hearing. *Id.* at 6-10. Petitioner points to several alleged incorrect facts in the record.  Finally, he claims that had he been aware of certain information, he would not have pled guilty. *Id.* at 17.

GROUND TWO: Ineffective Assistance of Counsel for failing to advise the Petitioner that his plea to criminal sexual conduct with a minor in the second

degree would be considered a "most serious" strike pursuant to S.C. Code Ann. § 17-25-45. ECF No. 1 at 7.

Petitioner attaches approximately five pages of supporting facts for Ground Two. ECF No. 1-1. Specifically, Petitioner maintains that the PCR Court and the South Carolina Supreme Court erred in finding that "[d]espite Petitioner's assertions to the contrary, there is probative evidence in the record before us that he would not have chosen to proceed to trial on the Georgetown County charges had counsel told him about the strike." *Id.* at 18. Additionally, Petitioner argues that Attorney Scott Joye repeatedly stated that he did not inform Petitioner about the two-strike rule. *Id.* at 19. Petitioner contends that because he pled guilty in Georgetown, he could not take the stand in his defense in Williamsburg because he would be questioned on his prior plea. *Id.* Had he been aware of the ramifications of pleading guilty, Petitioner maintains that he would have gone to trial and "fought to win." *Id.* at 20. Moreover, Petitioner argues that the conversation on the tape that the PCR court and the supreme court found to be the catalyst for Petitioner's plea concerned the lewd act charges and not the CSC charge. *Id.* at 22.

GROUND THREE: Brady Violation. ECF No. 1 at 8.

Petitioner attaches approximately three pages of facts concerning Ground Three. ECF No. 1-1 at 23-25. Therein, Petitioner argues that the State violated his due process rights by failing to disclose the specific dates that the alleged crimes took place. *Id.* at 23. Additionally, Petitioner maintains that had he been given the opportunity to know all of the evidence he would have been able to provide an alibi and witnesses. *Id.* Petitioner then cites to all the pieces of discovery that have the June through July of 1999 dates. Petitioner argues that the Deputy Solicitor deceptively used the broad dates of June through July of 1999 when all along he intended to eventually use the August 5-7, 1999 dates. *Id.* at 25. Finally, Petitioner contends that

the Solicitor has the obligation and responsibility to disclose all of the evidence and his failure to do so "should be considered prosecutorial misconduct by *Brady* Violation." *Id.*

### B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 323 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor

can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### C.     Habeas Corpus Standard of Review

#### 1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

#### 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the

claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)      the applicant has exhausted the remedies available in the courts of the State; or

(B)      (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)      An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v.*

*Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

            b.        Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state

procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id*. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

D.  Analysis

1.   Procedurally-Barred Grounds

Respondent contends that Ground Three (*Brady* violation) of Petitioner's habeas Petition is procedurally barred because it was not raised to the PCR court. ECF No. 24 at 38.  Petitioner contends that he explains the course of events that occurred at the PCR hearing concerning PCR counsel's failure to raise the *Brady* issue. ECF No. 35 at 23. Further, Petitioner argues that PCR counsel was ineffective for failing to put on the record the supporting documents that prove prosecutorial misconduct by *Brady* violation. *Id.* at 26. Finally, "Petitioner asks this court to realize that this is the first chance that Petitioner has had to raise this issue." *Id.*

The undersigned has reviewed Petitioner's PCR application and the transcript of the PCR hearing and observes that Ground Three was not raised in Petitioner's application, *see* App. 47-71, nor was this argument presented to the PCR court during the PCR hearing, s*ee* App. 93-299. The undersigned has also reviewed the PCR court's Order of Dismissal and finds that Petitioner's claim concerning a *Brady* violation was not ruled on by the PCR court. App. 334-55. Therefore, this issue is procedurally barred from federal habeas review. *See Plyler v. State*, 424 S.E.2d 477, 478 (S.C. 1992) (holding that an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court is procedurally barred).  Accordingly, Petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the grounds delineated as Ground Three in his habeas Petition.

Petitioner may, nonetheless, overcome procedural defaults and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996). The existence of cause ordinarily turns upon a showing of: 1) a denial of effective assistance of counsel, 2) a factor external to the defense

which impeded compliance with the state procedural rule, or 3) the novelty of the claim. *Murray*, 477 U.S. at 488.  Having reviewed the record evidence and the parties' legal memoranda, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claims.  Thus, these issues are procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir.), cert. denied, 519 U.S. 1016 (1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.*  The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, his claims are procedurally barred from consideration by this court and should be dismissed. The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Ground Three.[2]

    2.  Merits

---

[2] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Ground Three.

In Grounds One and Two, Petitioner alleges ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 669. In the context of a guilty plea, ineffective assistance of counsel claims may be asserted in limited circumstances. In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

> a. Ineffective Assistance of Counsel-Failure to Conduct a Sufficient Investigation into a CSC Charge.

Petitioner contends that he was denied effective assistance of counsel because his trial counsel failed "to conduct a sufficient investigation into the CSC Charge." ECF No. 1 at 5. Specifically, Petitioner argues that his defense counsel failed to recognize the importance of the date change of his CSC offense from June 1 through July 31 to August 5-7, because he would have been able to provide an alibi for the later dates. *Id.* at 1-5. Further, Petitioner contends that defense counsel failed to investigate possible defenses, particularly an alibi defense, and

thereafter failed to sufficiently prepare for trial. *Id.* at 5-6. Additionally, Petitioner argues that his PCR counsel failed to properly prepare for the PCR hearing and did not speak to key witnesses prior to his PCR hearing. *Id.* at 6-10. Petitioner points to several allegedly incorrect facts in the record.  Finally, he claims that had he been aware of certain information, he would not have pleaded guilty. *Id.* at 17.

Respondent moves for summary judgment and argues that both the PCR court and the South Carolina Supreme Court denied relief on Ground One, and Petitioner has failed to show that the supreme court made an unreasonable determination of the facts in denying relief upon this claim. ECF No. 24 at 44. Respondent maintains that the PCR record demonstrates that Petitioner was made aware of the August dates prior to his guilty plea. *Id.* Moreover, Respondent maintains that the indictment contains the term "on or about," meaning the indictment is not limited to only August 5, 1999 through August 7, 1999, for which Petitioner claims he has an alibi. *Id.*

In response to this argument, Petitioner maintains there are alibi witnesses who can testify that Petitioner "was at Kim Cook's house for the duration of the Youth World Changers Event that was held on August 5-7, 1999." ECF No. 35 at 12. Additionally, Petitioner alleges that other witnesses can testify that the showers at the church were inoperable. *Id.*  Further, Petitioner contends that a person identified by one of the victims stated that he never attended any event with Victim 3. *Id.* Petitioner asserts that had he known he could have presented such a strong defense, he would not have pleaded guilty to the CSC charge and would have proceeded to trial. *Id.* Therefore, he argues the PCR court and the South Carolina Supreme Court's rulings are unsupported by the probative evidence, and Petitioner should be entitled to a new trial. *Id.* at 12-16.

In rejecting Petitioner's post-conviction relief on this ground, the PCR Court found Petitioner "failed to prove that a potential alibi for the specific dates of August 5-7 was a matter that counsel should have investigated at the time, or that such a defense would have likely been successful at trial [and] because counsel was not put on notice regarding a defense related to the operability of the church showers, he had no reason to pursue this issue." App. 351. To support its finding, the PCR court noted that Petitioner and his family learned of the August 5-7 dates at least a week prior to his plea, and Petitioner never informed his counsel that the new dates impacted his decision to plead guilty. *Id.* at 348-49. Rather, Petitioner agreed to waive presentment of the CSC charge to the grand jury which waived confirmation of the new dates. *Id.* at 349. The PCR court noted that the proposed indictment indicated that the assault charge occurred "on or about August 5-7, 1999," and concluded that the time frame in Petitioner's case was never exact or definite. *Id.* Further, the PCR court was not convinced that the victim would have testified at trial that the offense absolutely occurred during August 5-7. *Id.* Regarding the inoperable shower assertion, the PCR court found that Petitioner, as pastor, would have been in the best position to alert his counsel of this fact and ask that an investigation into it occur. *Id.*

On review, the South Carolina Supreme Court affirmed the PCR court's finding that plea counsel conducted a reasonable investigation under the circumstances and found that probative evidence in the record supports the PCR court's findings. ECF No. 24-16 at 13. Moreover, the supreme court specifically noted:

> (1) Petitioner was aware of the date change on his CSC 2nd indictment prior to entering his plea, and did not advise counsel the new dates impacted his decision to plead guilty; (2) Petitioner unequivocally admitted his guilt at the plea proceeding, which was in "sharp contrast" to the allegation that he had an alibi; (3) the indictment alleged the incident occurred "on or about" August 5–7, and was not limited to those specific days; (4) Petitioner's alibi was only for August 5–7, and, therefore, did not cover the entire period; and (5) Petitioner failed to

> advise counsel of his contention that the showers at the church were not working
> the summer of the incident, and counsel had no reason to suspect otherwise.

ECF No. 24-16 at 13.

The undersigned finds that Petitioner cannot demonstrate that the PCR court or South Carolina Supreme Court unreasonably misapplied clearly established federal law in rejecting this claim, or that the PCR court made objectively unreasonable factual findings. A review of the guilty plea transcript and the testimony at the PCR hearing reveals that the PCR court's denial was fully supported by the record and was reasonable and therefore, it is entitled to deference here. Additionally, the PCR court found trial counsel's testimony to be credible and implicitly found Petitioner not to be credible. This credibility determination is also entitled to deference. *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003). Petitioner's general argument that plea counsel failed to do a thorough investigation and speculative arguments that possible defenses could have been raised concerning his alibi during the August 5-7, 1999 dates at issue fail to demonstrate that the PCR court unreasonably misapplied the *Strickland/Hill* test. Further, Petitioner has not clearly shown that the PCR court's credibility determinations were without support. *See Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.'") (quoting *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) and *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)). Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment be granted as to Ground One.

       b. Ineffective Assistance of Counsel Regarding Petitioner's plea to CSC
          with a minor in the Second Degree

Petitioner argues that his guilty plea was involuntary because his attorney did not advise him that his plea to CSC with a minor in the second degree would be considered a "most serious strike" pursuant to S.C. Code Ann § 17-25-45.

Respondent argues that the PCR court found that Petitioner lacked credibility and that neither Petitioner nor the witnesses he called provided specific reasons why knowledge of the recidivist statute would have caused Petitioner to change his plea. ECF No. 24 at 47. Additionally, Respondent argues that Petitioner proceeded to trial in Williamsburg County with full awareness that he could receive an LWOP sentence if convicted. *Id.* Therefore, Respondents maintain that it is not unreasonable for the South Carolina Supreme Court to find Petitioner had not met his burden of establishing that he was prejudiced by any deficient performance of counsel advising him about the recidivist statute. *Id.* at 49.

In response, Petitioner argues that his guilty plea was involuntary because his attorney did not advise him that his plea to CSC with a minor in the second degree would be considered a "most serious strike" pursuant to section 17-25-45 of the South Carolina Code, and he did not know the consequences of his plea. ECF No. 35 at 16. Petitioner maintains that because a CSC conviction on any CSC charge automatically elevates other CSC charges to a penalty of only life without parole, it is an exceptional circumstance to the collateral consequence rule. *Id.* at 17. Further, Petitioner contends that counsel's failure to advise him of the consequences to a plea amounts to deficient performance, and that his plea counsel acknowledged that he made a mistake. *Id.* at 18. Therefore, Petitioner argues the PCR court and the South Carolina Supreme Court's findings "are unsupported by any probative evidence, and the Petitioner is entitled to a new trial and federal habeas relief." *Id.* at 20.

It is clear from the record, and the PCR court found, that neither of Petitioner's two plea counsel discussed the effect of the "most serious" strike under section 17-25-45 concerning his CSC charge. ECF No. 24-4 at 79. However, the PCR court held that Petitioner's plea counsel could not be deemed "deficient" for failing to advise Petitioner of the two-strikes law because such a consequence is collateral and not direct. *Id.* at 80. The PCR court thoroughly defined a "direct" consequence to mean the "direct and immediate results of a guilty plea." *Id.* Further, the PCR court held that counsel cannot be held ineffective for failing to advise a defendant regarding the "indirect" consequences that do not "flow directly from his guilty plea." *Id.* Throughout its order the PCR court relies heavily on South Carolina specific law to support the holding that failure of plea counsel to advise a client on a collateral consequence of a guilty plea is not a deficient performance. *Id.*

On writ of certiorari, the South Carolina Supreme Court declined to answer the "novel question of whether plea counsel's failure to advise Petitioner of CSC 2nd's status as 'most serious' offense, which could be used to enhance his sentence for pending charges under section 17-25-45, constitutes ineffective assistance of counsel." ECF No. 24-16 at 9. There, the court found that Petitioner could not demonstrate that he was prejudiced by counsel's mistake. *Id.* at 11. Specifically, the supreme court found that there was probative evidence in the Record indicating Petitioner would not have chosen to proceed with a trial in Georgetown County even if counsel had told him about the strike. *Id.*

The undersigned finds that this court is prohibited from granting habeas relief unless the state court's decision contradicts, or is an unreasonable application of, "clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). With regard to the Petitioner's argument that his plea counsel was ineffective for failing to

advise him of the consequence of a CSC offense, or a "most serious offense" under section 17-25-45(C)(1) of the South Carolina Code, the state PCR and supreme court's decisions do not contradict and are not an unreasonable application of federal law as determined by the Supreme Court of the United States.[3]  Here, the PCR court found Petitioner failed to demonstrate that his plea counsel fell below an objective standard of reasonableness, or failed the first prong of the *Strickland* test. *See* App. 80-81. The PCR court based this ruling on South Carolina law concerning direct and collateral consequences of guilty pleas. *Id.* The United States Supreme Court has not stated whether statutory strikes resulting from guilty pleas are a direct or collateral consequence of a guilty plea.  Therefore, this court cannot conclude that the state PCR court's determination on the issue was contrary to, or an unreasonable application of, clearly established federal law. *See e.g., Bustos v. White*, 521 F.3d 321, 325-26 (4th Cir. 2008) (holding that because there is no Supreme Court precedent establishing that parole ineligibility constitutes a direct, rather than a collateral, consequence of a guilty plea, there was no basis for determining that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law); *see also Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (stating

---

[3] In his brief to the South Carolina Supreme Court, Petitioner argued that plea counsel's performance was deficient pursuant to *Padilla v. Kentucky*, 559 U.S. 356 (2010), and further argued that the *Padilla* holding should apply retroactively. ECF No. 24-14. In *Padilla*, the Supreme Court held that plea counsel's failure to inform defendant that he was automatically subject to deportation as a result of his plea amounted to deficient performance. *Id.* at 360. However, the *Padilla* Court limited its holding to the consequence of deportation and held: "We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*, 446 U.S., at 689 []. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation." *Id.* at 365. The South Carolina Supreme Court also noted the *Padilla* Court's limited holding: "On appeal, the United States Supreme Court reversed due to the unique nature of deportation, stating that deportation could not be categorized as either a direct or collateral consequence." *Taylor v. State*, 745 S.E.2d 97, 103 n.7 (S.C. 2013). In any event, the United States Supreme Court held that *Padilla* does not apply retroactively. *Chaidez v. United States*, _ U.S. _, 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149 (2013).

that "there can be no Supreme Court precedent to be contradicted or unreasonably applied, and therefore no habeas relief, when there is no Supreme Court precedent on point or where the Court has reserved the question."). The undersigned must agree with the state court's application of its own law to the facts of this case and find that plea counsel was not ineffective.

Moreover, the undersigned also notes Petitioner's argument concerning prejudice—that he would never have pleaded guilty to the Georgetown County CSC charge had he known he would automatically be sentenced to LWOP if found guilty on the Williamsburg County CSC charge. To overcome the PCR court and the supreme court's finding of prejudice, Petitioner must demonstrate not only that he would have gone to trial on the Georgetown CSC charge but that a jury would have found him not guilty of the CSC charge. *See Hill*, 474 U.S. at 59 (holding the "prejudice" inquiry for "guilty plea" cases, involves not simply whether counsel's error caused a defendant to plead guilty rather than go to trial but also a determination of whether the outcome of a trial would have been different). The undersigned notes that the PCR court and the supreme court strongly rely on a tape recording that allegedly incriminates Petitioner and was the "catalyst" for his decision to plead guilty. *See* App. 352-53; ECF No. 24-16 at 12. However, Petitioner argues that the tape recording concerns only the lewd act charges and not the "most serious" CSC charge. Plea counsel made the same assertion in the PCR hearing. App. 262-63. Therefore, the undersigned agrees that Petitioner may have opted to proceed to trial on the Georgetown County CSC charge. However, Petitioner has not demonstrated that he would have been exonerated on the Georgetown County CSC charge.

During the plea in Georgetown County, each of the three victims spoke and described the difficulties caused in their lives due to the offenses. App. 21-42. One of the victims returned from military duties in Iraq in order to participate in the trial. App. 11. Following the victims'

testimonials, the defense presented its case in mitigation, including the fact that the Petitioner, as a young man, suffered abuse at the hands of certain family members. App. 26. Some of the witnesses who testified on behalf of Petitioner confirmed the pattern of abuse that existed in Petitioner's extended family. App. 30-48. Based on the victims' testimony and the pattern of abuse presented during Petitioner's plea, the undersigned finds there is no reasonable probability that a Georgetown County jury would not have found Petitioner guilty of the CSC charge. *Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Therefore, the undersigned also recommends granting Respondent's Motion for Summary Judgment concerning Ground Two because Petitioner failed to demonstrate the prejudice prong of the *Strickland* test.

IV.     Conclusion

For the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, be GRANTED and the habeas Petition be DISMISSED with prejudice.


IT IS SO RECOMMENDED.


June 26, 2014                                        Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**